**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

UNITED STATES OF AMERICA,

      Plaintiff,

   vs.                           No. 1:17-cr-01235-WJ

CORNELIUS GALLOWAY, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANTS' JOINT MOTION TO COMPEL DISCOVERY (DOC. 107)

THIS MATTER comes before the Court upon a hearing held on April 18, 2018 ("April 18th hearing") on Defendants' Joint Motion to Compel Government to Produce Rule 16 and Brady-Giglio Materials, filed November 21, 2017 (Doc. 107).[1] In this motion, Defendants seek numerous categories of discovery material under Fed.R.Crim.P. 16(a)(1)(A) and (E); _Brady v. Maryland_, 373 U.S. 83, 87 (1963) and _Giglio v. U.S._, 405 U.S. 150, 153 (1972); and 18 U.S.C. §3500(a) (the Jencks Act, prohibiting a district court from ordering production of statements of witnesses the government intends to call at trial before they testify).

Defendants seeks discovery in several categories, which will be addressed in turn.

## I.     Oral Statements

Defendants seek production of oral statements made by co-defendants to other co-defendants, including Defendants Woods, Taylor and Brown, and also Adrian Causey and Adrian Brown. The Government contends that Rule 16 requires disclosure of a defendant's oral statement, but it does not require disclosure of other defendants' statements. The Government

---

[1] Defendants Taylor, Wood and Brown also join in the motion. Ruling was deferred on this motion in order to first resolve other discovery management and formatting issues. _See_ Doc. 191.

also claims that these statements are not discoverable under the Jencks Act because the statements sought by Defendants are custodial, and any statements that do fall under the Jencks Act will be produced at a later date and closer to trial. Defendants point out that the March 8 statement of Xavier Stallworth was not a custodial statement and that this statement will assist in the preparation of the defense.

To the extent that the statements sought by Defendants are co-conspirator statements, the Jencks Act controls. The Government is correct that the Jencks Act does not apply to statements made while in custody, as these would qualify as testimonial statements and the admission of such statements implicates a defendant's Sixth Amendment rights under the Confrontation Clause. *See Bruton v. U.S.*, 391 U.S. 123 (1968); *U.S. v. Nash*, 482 F.3d 1210 (10th Cir. 2007).[2]

Under Rule 16, the Government must disclose to a defendant "the substance of any relevant oral statement *made by the defendant* . . . ." Rule 16(a)(1)(A). As the Government maintains, the rule does not require disclosure of statements of other defendants. Defendants' argument that these statements are material to preparing the defense does not apply under Rule 16, unless the information sought falls under the category of documents and objects. *See* Rule 16(a)(1)(E)(i).

This request is granted and denied in part. Both the Jencks Act and Rule 16 of the Federal Rules of Civil Procedure are explicit in what disclosure is required. For these oral statements requested by Defendant: (1) the Government shall disclose any statements made by the requesting defendant under Rule 16; (2) the Government shall disclose any statements made by co-conspirators which it intends to use at trial, at a time which is closer to trial but far enough out in time so that a determination of admissibility may be made by the Court through a *James*

---

[2] Co-conspirator's statements that qualify under Fed.R.Evid. 801(d)(2)(E) do not present the same constitutional issues, since admissibility, of such statements is generally determined through a *James* hearing. *U.S. v. Owens*, 70 F.3d 1118, 1123-24 (10th Cir. 1995); *see also U.S. v. Bennett*, 158 F.R.D. 482 (D.Kan. 1994).

hearing as to whether the statements are being presented as co-conspirator statements; and (3) the Government is not required to disclose any testimonial (or custodial) statements of co-conspirators, since such statements are not discoverable under the Jencks Act.

## II. Cellular Phone Data

Defendants are requesting all data, including text messaging, call information, web browsing history, photos, videos, contact lists, emails and cell tower reports collected from cell phones belonging to not only the Galloways but all co-defendants and alleged victims named in the indictment. The Government is in the process of recovering information from six cell phones that are in disrepair, is awaiting analysis, and intends to turn over this discovery when received. This request is denied as moot at this time, subject to reconsideration should the need arise.

## III. Discovery Related to Overt Act of Homicides of Daryl Young and Tobi Stanfill

Defendants seek all information related to the homicide of Daryl Young, one of the overt acts alleged in the Superseding Indictment, including crime scene photographs and forensic reports.  At the April 18th hearing, Defendant specifically referred to requests for CAD and police reports, and in particular: (1) a "detective file" regarding the search warrant on the Woods' residence, Bates number 321491; (2) the Super 8 motel video taken prior to TS' homicide; (3) a more complete disclosure of all video surveillance from homes in the surrounding area with identifying information as to the homes from which the videos were taken; and (4) a video referred to on Tobi Stanfill's Facebook page indicating that she was scared of a certain individual, and which Defendants claim may be material to the identification of a potential alternate suspect.

The Government is uncertain as to the existence of a separate "detective file" and contends that it is hearing of the other specific requests at the hearing for the first time.  The

Government represented to the Court that it will confer with Detective Jodi Gonterman from the Albuquerque Police Department ("APD") to ascertain to what extent this material exists. The Government intends to disclose this information if it does exist.

Defendants' request in this category is denied at this time, pending the Government's inquiry into whether this material exists, and subject to the Court's reconsideration should Defendant raise this issue at a later time.

## IV.     Discovery Related to Sex Trafficking of Tobi Stanfill, M.V., and Juvenile J.

Defendants request disclosure of records from the website "booking.com."[3]    The Government has initiated the process of working to get these records from the Netherlands (where booking.com is headquartered) through DOJ and the Mutual Legal Assistance Treaty, and assures Defendants it will turn over this material when it is received.    Because the Government is subject to the vagaries of international cooperation, Defendants will also have to be patient in receiving this material.

Defendants also seek discovery of the mental health records of M.V., who they claim was the only eyewitness to the alleged crime and that this information could be relevant to her credibility as a witness.    Defendants contend that an *in camera* review would be appropriate in order to determine whether any of the records are relevant.    However, under *Brady/Giglio,* and Rule 16, the Government is required to disclose only material which is within its possession, custody or control, and because the Government states that it has none of these records, Defendants' request if denied.

However, the Court rules as follows:

---

[3] Ms. Galloway is charged with an overt act for posting online advertisements for commercial sex services using the classified website "backpage.com."   Defendants claim that this information is material to the preparation of the Galloways' defense.

(1) Should Defendants decide to issue a Rule 17(c) subpoena, the Court orders that (1) the request for the subpoena shall not be done on an *ex parte* basis and the Government shall be given notice;

(2) If the Court grants the Rule 17(c) subpoena, then an *in camera* review would be appropriate to determine the admissibility and relevance of this material; and

(3)  Should the Government come into possession of these records, it shall notify defense counsel, and an *in camera* review shall be conducted by the Court.

**V.      Discovery Related to Search of Co-Defendant Woods' Residence**

Defendants have already received some of the material requested in this category.  At the April 18th hearing, Defendants stated that they still seek statements from individuals, whose initials were noted on police reports (Bates number 6329).  They describe this evidence as statements by witnesses who gave direct and relevant information about the allegations behind the murders.  Defendants claim that these statements are not Jencks Act material, and so they make this request under Rule 16.  The Government contends that simply because statements do not qualify under the Jencks Act, does not mean they are necessarily discoverable under Rule 16. The Court agrees with this assessment.  Discovery does not fall under any of the Rule 16's provision by default.  As statements, they are not subject to discovery under Rule 16(a)(1)(A); and they do not fall under Rule 16(a)(1)(E) because they are not documents and objects. Therefore, Defendants' request for discovery in this category is denied.  Should the Government subsequently decide to call any of these individuals as witnesses, the Government will be required to disclose their identities and testimony pursuant to the Jencks Act.

**VI.     Gang Data Base Information**

Defendants request information on the gang affiliations of each Defendant, the two murder victims and uncharged individuals Adrian Causey, Adrian Brown, Deaven White and Terry Calhoun. They claim that the Government's investigation has revealed that several of the individuals related to the case have extensive gang connections and that this information could be relevant to showing that the murders are connected to the actions of a specific gang rather than any gang Cornelius Galloway had been involved with. Defendant stated that he may hire an expert to testify that it is highly unlikely that one gang would have anything to do with members of another gang, thus making it unlikely that Galloway would have had any connection to the murders.

The Court finds this request to be overreaching and speculative, even assuming the Government had this material in its possession. Defendants seek to comb law enforcement records looking for information on the gang affiliation of certain individuals, hoping that this could prove that Cornelius Galloway could not be associated with any of the murders because he was not a member of the gang responsible for the murders (which itself would need to be proven), but had belonged to a different gang. This request does not pass the "materiality" test under Rule 16 and it will be denied.

## VII.    Government Payments to Alleged Victims

Defendants request all information "immediately" concerning material support provided by, or administered through, the Government to each alleged victim and/or material witness throughout the investigation and pendency of this case. They seek information on all monies and material support paid and provided to each alleged victim, relatives of alleged victims, or material witness, with the dates of each and every distribution.

The Government is in the process of a final review of the material which is responsive to this request, and intends to disclose this information shortly.   Therefore, this request is denied at this time, subject to the Court's reconsideration should Defendant find it necessary to raise this issue at a later time.

**SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE